UNITED STATES of America,
Plaintiff–Appellee,

v.

Jack FARMER, Kevin McNab, Pamela Farmer, Martin Byrski, James Villalpando, and Michael Farmer, Defendants–Appellants.

Nos. 89–1491, 89–1535, 89–1536, 89–1622, 89–1623 and 89–1624.

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1990.

Decided Jan. 28, 1991.

**648**

David C. Thomas, Legal Services Center, Chicago, Ill., for Jack Farmer.

Kenneth L. Cunniff, Chicago, Ill., for Kevin McNab.

John A. Meyer, Chicago, Ill., for Pamela Farmer.

Sarah Jennings Hunt, Cambridge, Mass., Donald A. Harwood, Hrones & Harwood, Boston, Mass., for Martin Byrski.

Paul M. Brayman, Chicago, Ill., for James Villalpando.

Marianne Jackson, Chicago, Ill., for Michael Farmer.

Before CUDAHY, COFFEY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

The appellants were all convicted of RICO and/or other criminal offenses in connection with their involvement in a drug, robbery and extortion ring headed by appellant Jack Farmer. The appellants have appealed their convictions on numerous grounds. We affirm.

### I. FACTS

The investigation leading to the drug and racketeering charges in this large RICO conspiracy case began in 1983 when one Taras Jaworskyj told the FBI about the drug ring in which he was involved. The information provided by Jaworskyj led to a three year investigation into the expansive criminal organization headed by appellant Jack Farmer. This organization sold drugs, committed murder and perpetrated home invasions. After a federal indictment was returned against him in 1983, Jack Farmer pleaded guilty to one count of possessing cocaine with intent to distribute and to one count of conspiracy to distribute cocaine. The plea agreement then signed by Jack Farmer stated specifically that the federal government was not precluded from prosecuting him for racketeering acts then under investigation. (In addition to pleading guilty to these two federal drug counts, Jack Farmer had previously been accused and acquitted of murder in Illinois state court.)

Thomas M. Durkin, Asst. U.S. Atty., David S. Rosenbloom, Office of the U.S. Atty., Chicago, Ill., for U.S.

A grand jury subsequently returned another federal indictment containing eighty-five counts against Jack Farmer, the other parties to this appeal (including Jack Farmer's brother and wife) and others. The first trial of the appellants here ended in a mistrial. At the second trial, a jury found these appellants guilty of most of the counts set forth in the indictment. After denying various motions for new trials and judgments of acquittal, the district court sentenced all of the appellants to substantial jail time.

The appellants allege a myriad of errors on appeal. These alleged errors include claims: (1) that Jack Farmer's conviction violated the double jeopardy clause of the fifth amendment; (2) that the district court abused its discretion in upholding the sufficiency of the government's Title III applications for electronic surveillance; (3) that the district court abused its discretion in refusing to sever the trials of some of the appellants; (4) that the district court improperly exercised its discretion in conducting the jury selection process; (5) that the trial court abused its discretion in admitting/excluding certain evidence; (6) that the district court erroneously instructed the jury as to the telephone counts; (7) that the district court's conspiracy instructions constituted plain error; (8) that there was insufficient evidence to support the jury's finding that Jack Farmer's criminal organization had the requisite effect on interstate commerce; (9) that the jury erroneously or improperly convicted Jack Farmer of extortion and various tax violations; (10) that the district court's instruction on the obstruction of justice count was improper; (11) that it was an abuse of discretion for the district court to repeat its *Silvern* instruction; (12) that the district court did not adhere to the requirements of Federal Rule of Criminal Procedure 32 when sentencing appellant McNab; and (13) that the sentences given to appellants James Villalpando and Pamela Farmer were excessive and the result of the district court's reliance upon improper inferences or factors.

All of the appellants' claims lack merit. The double jeopardy, interstate commerce and disparate sentencing allegations raised by the appellants are discussed in some detail. The appellants' remaining claims are discussed in a more summary fashion below. Additional facts are provided as warranted.

## II. Analysis

### A. Double Jeopardy

Count II of the indictment charged defendant Jack Farmer with conducting the affairs of an enterprise through a pattern of racketeering activity. That count alleged fifty-nine separate predicate acts, among them: two murders, nine robberies, two extortions, an obstruction of justice and various drug trafficking offenses. The jury found that Jack Farmer had committed forty-one of these predicate acts. Jack Farmer now claims that his conviction under Counts I (for racketeering conspiracy) and II (for racketeering) of the indictment violated double jeopardy because five of the forty-one predicate acts he was found to have committed had actually been the subject of previous criminal proceedings. More specifically, he complains that Racketeering Act Number 46 alleged a murder of which he had already been acquitted by an Illinois court, and that Racketeering Acts Numbers 1 through 4 and 37 alleged drug offenses that were the subject of the previous federal guilty plea in 1983.[1]

Jack Farmer does not have a valid double jeopardy claim with respect to his previous acquittal for murder in state court. It is a fundamental principle of our dual criminal systems that even criminal acts which form the basis of a prior state *acquittal* can be used as predicate acts in a federal proceeding without violating double jeopardy. Simply put, "a conviction or acquittal by one sovereign does not constitute prior jeopardy for purposes of prosecution by the other sovereign." *United States v. Jones,* 808 F.2d 561, 565 (7th Cir.1986), *cert. denied sub nom. Humphrey v.*

---

1. Apparently, the jury found that Jack Farmer had not committed Racketeering Act Number 4, a July 1983 sale of one gram of cocaine. Appellee's Br. at 24 n. 5.

*United States*, 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987). This so-called "dual sovereignty" doctrine has been consistently upheld by the Supreme Court in the name of federalism. *Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985); *United States v. Wheeler*, 435 U.S. 313, 317, 98 S.Ct. 1079, 1083, 55 L.Ed.2d 303 (1978); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *see also United States v. Schwartz*, 787 F.2d 257, 266 (7th Cir. 1986). Hence, a federal RICO conviction which includes predicate acts for which a defendant has already been *acquitted* under state law does not violate double jeopardy. *United States v. Jones*, 808 F.2d at 565; *see also Hutul v. United States*, 582 F.2d 1155, 1157 (7th Cir.1978), *cert. denied*, 440 U.S. 911, 99 S.Ct. 1222, 59 L.Ed.2d 459 (1979). Given the "dual sovereignty" doctrine, then, successive state and federal prosecutions for the same acts do not offend the fifth amendment to the United States Constitution. Successive prosecutions by the *same* sovereign must, however, be analyzed under a different theory.

With respect to same-sovereign prosecutions, *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), decided just before we heard this appeal, held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* 110 S.Ct. at 2084.[2] The Third Circuit recently held that *Grady* is inapplicable to RICO prosecutions, such as this one, because "RICO's language and legislative history clearly evince Congress's intent to allow separate prosecutions and cumulative punishment of predicate offenses and RICO offenses." *United States v. Pungitore*, 910 F.2d 1084, 1108 (3d Cir.1990) (citing *United States v. Grayson*, 795 F.2d 278, 283 (3d Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987)). In light of the facts presented by

this case, however, we believe it is unnecessary to assess the applicability of *Grady v. Corbin* to the double jeopardy claims of appellant Jack Farmer.

■ Four of the forty-one predicate acts which Jack Farmer has been found to have committed were acts to which Farmer had previously pleaded guilty. The plea agreement signed by Farmer specifically noted that the federal government was continuing to investigate him for "acts of racketeering" and that the plea "in no way preclude[d] the federal government from prosecuting defendant Farmer for those acts." Plea Agr. at 4, ¶ 11. Hence, it could be argued with some force that Jack Farmer specifically waived any double jeopardy claims relating to the conduct which was the subject of both the federal plea agreement in the earlier case and the later racketeering charges.

■ Moreover, in addition to the four predicate acts challenged here, Jack Farmer was found to have committed thirty-seven other predicate acts. This is surely enough to support the finding of a RICO pattern. It should also render any reliance upon Farmer's previous convictions, even if improper, harmless. *See, e.g., Pungitore*, 910 F.2d at 1107 ("[E]xtortion was only one of the 32 predicate acts which the jury found that [the defendant] had committed. Thus, even if we deleted the [extortion count], we would affirm the convictions."); *United States v. Rone*, 598 F.2d 564, 571 (9th Cir.1979), *cert. denied sub nom. Little v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Because the inclusion of the challenged predicate acts (involving federal crimes) is not necessary to sustain Jack Farmer's conviction, his corresponding double jeopardy claims fail on harmless error grounds. As noted, the double jeopardy claim based on the prior state acquittal of murder is defeated by the "dual sovereignty" principle.

---

**2.** We directed the parties to submit supplemental briefs addressing the impact of *Grady* on the present case.

## B. The Indictment and Interstate Commerce

■■■ The appellants attack their RICO conspiracy and substantive RICO convictions on the ground that the government failed to show that their racketeering enterprise affected interstate commerce.[3] In a RICO prosecution the government carries the burden of establishing an effect on interstate commerce. *See* 18 U.S.C. § 1962(c) (1988); *United States v. Alvarez*, 860 F.2d 801, 820 (7th Cir.1988), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989). A minor or minimal influence on interstate commerce is sufficient. *Alvarez*, 860 F.2d at 820. Accordingly, the "required nexus between the activities of the enterprise and interstate commerce need not be great." *United States v. Muskovsky*, 863 F.2d 1319, 1325 (7th Cir.1988), *cert. denied*, 489 U.S. 1067, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989). Moreover, to satisfy the interstate element of the RICO statute, it is the enterprise and not the individual defendants that must engage in or affect interstate commerce. *United States v. Groff*, 643 F.2d 396, 400 (6th Cir.1981).

■■■ The appellants essentially contend that an effect on interstate commerce is lacking in this case because the cocaine sold by Jack Farmer's criminal enterprise was flown directly from South America to Illinois or the coca leaves from which the contraband was produced were grown in Illinois.[4] Even if the cocaine did fly directly from Columbia to Illinois, the requisite effect upon interstate commerce would be established since the plane would have had to cross over the jurisdictional airspace of several different states intervening between the seacoast and Illinois. *Cf. United States v. Perez*, 776 F.2d 797, 801 (9th Cir.1985). A nexus with interstate commerce can be established in other ways as well.

The requisite effect on commerce is established, for example, where the enterprise obtains "supplies from companies located outside" the state. *United States v. Conn*, 769 F.2d 420, 424 (7th Cir.1985); *see also Muskovsky*, 863 F.2d at 1325. The evidence showed that at least one of the (drug) scales seized in the search of Jack Farmer's mother's house was manufactured in New Jersey. Appellee's Br. at 91 n. 33 (citing Government Exhibit Chicago 7A). Hence, we find that the government sufficiently proved that the activities of Jack Farmer's criminal organization had at least a minimal effect upon interstate commerce, as required by federal racketeering law.

## C. The Allegedly Excessive Sentences of James Villalpando and Pamela Farmer

Appellant James Villalpando was sentenced to twelve years in prison for narcotics conspiracy and to five years probation for conviction on two telephone counts. Villalpando was, however, acquitted of racketeering. Appellant Pamela Farmer was sentenced to a total of twenty-four years in prison for conspiracy to distribute cocaine, racketeering conspiracy and thirteen counts of using a telephone to facilitate the distribution of cocaine. Both appellants claim, for different reasons, that the district court relied on improper inferences when sentencing them.

James Villalpando thinks that his sentence was excessive because he received a longer sentence than any other defendant on the narcotics conspiracy count. (Villalpando actually received the shortest overall sentence of all the co-conspirators who join in this appeal.) Villalpando asserts that this disparity, with respect to his narcotics

---

**3.** The appellants also claim that the court's interstate commerce instruction improperly shifted the burden of proof and constructively amended the indictment. The record shows, however, that the appellants did not specifically object to the district court's tendered interstate commerce instructions. Hence, this claim is waived. *United States v. Field*, 875 F.2d 130 (7th Cir.1989); *United States v. Franco*, 874 F.2d 1136 (7th Cir.1989). Given the facts of this case, we find that the tendered instructions did not result in plain error.

**4.** The evidence (coupled with the court's recognition of commonly accepted facts) sufficiently established that some or all of the cocaine was not produced from plants grown in Illinois.

conspiracy sentence, coupled with the terseness of the district court's remarks raises an "inference" that the district court was penalizing him for having been acquitted of racketeering. Pamela Farmer, on the other hand, claims that the court's sentencing remarks show that the court relied on inaccurate inferences drawn from the evidence adduced at trial when sentencing her. More specifically, she claims that none of the evidence tied her to the violent crimes committed by her husband, Jack Farmer.

■ This case arose before the federal sentencing guidelines took effect. Hence, the sentences of Villalpando and Farmer will not be overturned unless the district court relied on improper considerations or unreliable information in making its sentencing decisions. *United States v. George*, 891 F.2d 140, 143 (7th Cir.1989). Neither appellant points to any *direct* evidence that the district judge relied on improper considerations when sentencing. Rather, both try to point out improper inferences that *could* be drawn from the district court's decisions and reasons. We will not assume, solely on the basis of the appellants' unsupported allegations, that the district court relied upon improper inferences or factors when sentencing them. Moreover, there was ample evidence in the record that Pamela Farmer was not exactly an innocent housewife, and the district court sentenced her accordingly. The sentences of appellants James Villalpando and Pamela Farmer are therefore affirmed.

### D. The Appellants' Remaining Claims

#### 1. Title III

■ The appellants claim that the government's wiretap applications did not sufficiently show the necessity for the electronic surveillance undertaken by the government, as required by Title III. *See* 18 U.S.C. § 2518(1)(c) (1988). This argument is specious. The government's burden of proving "necessity" is not high. *United States v. Zambrana*, 841 F.2d 1320, 1329 (7th Cir.1988). The government's affidavits—which asserted that electronic surveillance was necessary (1) because the in-

vestigation was having trouble fingering other members of the conspiracy without electronic surveillance; (2) because of the difficulty in conducting undercover surveillance in Farmer's ethnic neighborhood; and (3) because of the possible danger to undercover agents and cooperating witnesses—were sufficient, given the government's burden, to establish necessity under Title III. Hence, the district court did not abuse its discretion in denying the defendants' motion to suppress the voluminous electronic evidence.

#### 2. Severance

■ Jack Farmer, Martin Byrski and Michael Farmer all appeal the district court's denial of their various severance motions. Michael Farmer and Martin Byrski claim that the case was so complex and that there was such a "gross disparity" in the evidence against them, as compared to the organization's ring leader, Jack Farmer, that they were prejudiced by the jury's inability to separate the evidence against the various parties. Jack Farmer, on the other hand, claims that he was prejudiced by the coercion defenses offered by Martin Byrski, Pamela Farmer and Michael Farmer. (These appellants had argued that Jack Farmer had pressured them into committing various criminal acts.)

A district court's ruling on a severance motion will be overturned only upon a showing of an abuse of discretion. *United States v. Briscoe*, 896 F.2d 1476, 1516 (7th Cir.) (quoting *United States v. Moya–Gomez*, 860 F.2d 706, 754 (7th Cir.1988)), *cert. denied sub nom. Usman v. United States*, —— U.S. ——, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). In order to appeal successfully the denial of a severance motion, a defendant must also show actual prejudice resulting from the denial. *Id.* None of the defendants in this case can make the requisite "actual prejudice" showing.

As the government points out, the record shows that the jury meticulously considered the evidence against each defendant. On the various counts against the individual defendants, for example, the jury returned sixty-two findings of guilty

and thirty-eight findings of not guilty. Two defendants were acquitted altogether and every defendant, with the exception of Michael Farmer, was acquitted of at least one count. Appellee's App., Ex. A. Given the meticulousness suggested by the jury's verdict, we do not believe that these appellants were actually prejudiced by the joint trial.

In addition, we pause to note that Jack Farmer was not actually prejudiced by the coercion defenses of some of his co-conspirators—Farmer allegedly coerced the others to commit crimes—given that Farmer's own defense rested largely on the argument that drugs had made him a crazy and violent man. In short, the defenses of Martin Byrski, Pamela Farmer and Michael Farmer were not antagonistic to the defense offered by Jack Farmer. Hence, the denials of the appellants' severance motions are affirmed.

### 3. The Jury Selection Process

■ Appellant James Villalpando complains that the district court unfairly conducted the jury selection process by not granting him additional peremptory challenges (the district court did, however, grant all of the defendants together an additional ten peremptory challenges) and by not explaining the jury selection process adequately. More specifically, Villalpando claims that it was an abuse of discretion for the district court not to grant him additional peremptory challenges when it became apparent that counsel for the various defendants could not agree on how to exercise their joint challenges.

In multi-defendant cases, Federal Rule of Criminal Procedure 24(b) gives the trial court the discretion to grant additional challenges, to be exercised jointly or separately. The whole point of setting a limit on the number of peremptory challenges is to require counsel to make strategic decisions and to conserve judicial resources that might be wasted by allowing each counsel to challenge every juror. *See United States v. McClendon,* 782 F.2d 785, 787 (9th Cir.1986). Hence, the fact that Villalpando was not given enough peremp-

tory challenges to satisfy him does not necessarily result in an abuse of discretion. Moreover, the district court attempted to resolve the conflict among the various defense counsel by allocating two challenges to each defendant. This seems eminently reasonable. Hence, we find that there was no abuse of discretion here.

■ Appellant Villalpando also contends that the district court inadequately advised defense counsel of the procedure for the exercise of peremptory challenges, thereby restricting the exercise of this right. Transcripts of this phase of the trial seem to show that the defense attorneys were indeed somewhat confused about the number of peremptory challenges each was allowed and about when these challenges were to be exercised. (The district judge apparently decided to wait until the need for additional peremptory challenges was shown before deciding on the exact number.) The government points out in response, however, that the jury selection system was actually approved the day before jury selection started. (The defense, collectively, was apparently granted an additional 10 peremptory challenges during the first day of jury selection.) We believe that any confusion over the jury selection process was not so severe or pervasive as to deprive the appellants of the meaningful use of their peremptory challenges.

### 4. The Trial Court's Evidentiary Rulings

The appellants also claim that two of the evidentiary rulings made by the district court constituted reversible error. All appellants claim that the lower court improperly permitted government agent Rodriguez to testify about the amount of coca leaves required to make one kilogram of cocaine in powder form. In addition, Pamela Farmer objects to the trial court's refusal to permit her to put into evidence a tape recording of a conversation between her and an unindicted third party that concerned her husband's violence.

"[A] reviewing court gives special deference to the evidentiary rulings of the trial court." *United States v. Kaden,* 819 F.2d

813, 818 (7th Cir.1987). Thus, we will reverse such rulings only upon a showing that the trial court abused its discretion. *United States v. Alvarez,* 860 F.2d 801, 807 (7th Cir.1988). But, even erroneous evidentiary rulings will not be overturned if any resulting error was harmless. *United States v. Zapata,* 871 F.2d 616, 622 (7th Cir.1989).

 We think that, even if the evidentiary rulings we have noted were erroneous (and we are doubtful that they were), any error was indeed harmless. As the government notes, the point underlying Agent Rodriguez's testimony was that the cocaine in question came from outside the state of Illinois, a fact which was apparently proven by the testimony of others (and which also seems to accord with common sense). Similarly, the exclusion of Pamela Farmer's conversation was harmless because there was ample evidence already in the record that her husband was a violent man.

### 5. Jury Instructions

The appellants contend that the jury instructions regarding telephone facilitation, conspiracy, extortion, racketeering affecting commerce, willful tax evasion, obstruction of justice and repetition of the *Silvern* instruction (dealing with jury deadlock) were improper. Although all have been considered, we decline to analyze every one of these objections in detail, finding that the appellants' jury instruction arguments were waived or that the tendered instructions comported with established law. Moreover, our review of the record shows that there was sufficient evidence to support the appellants' convictions on the counts charged.

### 6. Rule 32 and the Sentencing of Appellant Kevin McNab

Appellant Kevin McNab contends that he should be resentenced because, in sentencing, the district court failed to make a factual determination or, in the alternative, to assert that disputed facts would not be considered in sentencing, as required by Federal Rule of Criminal Procedure 32(c)(3)(D). McNab objected to the offense severity rating and the amount of narcotics computed in the pre-sentence report. The district court eventually amended the pre-sentence report to reflect a lower quantity of narcotics, but asserted that a determination of the offense severity rating was "a legal conclusion based on facts" that was not for McNab to make.

In connection with some of the co-defendants, the district court had already asserted that he would not take disputed facts into account in sentencing. Hence, this prong of Rule 32 was satisfied. McNab asserts, however, that this was not enough; that the amount of narcotics goes to his culpability in the conspiracy and that, therefore, the district court was required to hold a hearing. The government argues, in response, that McNab's claim regarding this factual dispute was waived because the district court offered to make a factual finding, but McNab's attorney declined to press the point. Appellant McNab has not filed a reply brief. Hence, we have no idea how he would respond to the government's argument. Regardless, the facts show that McNab was offered a finding as to the amount of drugs. He chose not to avail himself of it. We may not now pursue a matter abandoned in the district court.

### 7. Other Matters

As to other matters offered here, they have received due consideration and are found to be without merit.

### III. Conclusion

For all the foregoing reasons, the judgment of the district court is

Affirmed.