James Roy KNOX, Petitioner–Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Div., Respondent–Appellee.

No. 90–2693.

United States Court of Appeals, Fifth Circuit.

March 28, 1991.

Layne E. Kruse, Richard N. Carrell (Court-appointed), Fulbright & Jaworski, Houston, Tex., for petitioner-appellant.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, SMITH and WIENER, Circuit Judges.

PER CURIAM:

Petitioner James Roy Knox was convicted of capital murder in the 56th Judicial District Court of Galveston County, Texas, regarding the robbery of a pharmacy and the murder of its proprietor. After a penalty hearing, the jury answered in the affirmative to the three special issues sub-

mitted pursuant to Texas law, and the court sentenced Knox to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Knox v. State,* 744 S.W.2d 53 (Tex.Crim.App.1987). The United States Supreme Court denied certiorari. *Knox v. Texas,* 486 U.S. 1061, 108 S.Ct. 2834, 100 L.Ed.2d 934 (1988). Knox's state habeas petition was denied by the trial court and by the Texas Court of Criminal Appeals.

Knox filed his federal habeas petition with the district court, asserting 24 separate points of error. Finding no error, the district court granted the state's motion for summary judgment. The district court dismissed Knox's petition in its entirety, and lifted the stay of execution.

On appeal here, Knox raises several points of error challenging only the propriety of his death sentence. He argues generally that (1) the state court erred in refusing his request for an instruction on the legal status of parole in light of the court's assurances during *voir dire* that such an instruction would be given; (2) the prosecution wrongfully withheld *Brady* evidence; (3) the state court erred by allowing perjured testimony to be place before the jury; (4) the state court erred by denying him what amount to *Penry* instructions.

We find Knox's argument regarding his requested parole instruction meritorious. On this ground, we reverse the district court and remand with directions to grant the writ of habeas corpus, unless the State of Texas conducts a new penalty phase determination within a reasonable time.

We pretermit rulings on Knox's other allegations of error since they are unlikely to recur on such redetermination. Because Knox now knows what he alleges the prosecution withheld, any *Brady* violation that might have occurred will of necessity be corrected upon resentencing. The purported perjured testimony admitted at the original sentencing hearing is susceptible to like reasoning. The Texas Attorney General informed us at oral argument that trial courts in Texas capital cases now give instructions on mitigating evidence beyond the scope of the three special issues. This procedure should eliminate any *Penry* claim.

During the course of *voir dire,* the trial judge permitted Knox's counsel to question the prospective jurors on their understanding of what a "life sentence" means in Texas. Counsel contends that several persons on the venire harbored misconceptions about the actual length of incarceration which would result from a sentence of life imprisonment.

The *voir dire* of Richard Jacques by Knox's counsel proceeded, in relevant part, as follows:

Q. You said in your statement you believe in capital punishment.

A. Yes, sir.

Q. Would you explain to the Court why you believe in capital punishment?

A. I believe it's one of the few deterrents we have against that type of crime.

Q. How do you feel about options such as life imprisonment?

A. How do I feel about it?

Q. Yes.

A. Well, life imprisonment, to me, is not life imprisonment, when someone is out on the street in five, seven years. And I don't feel like that's a deterrent. That's my feeling. You asked.

Q. Yes, sir. And thank you for your answer. Now, if in this case, I would take that to be part of your reasoning, or potentially part of your reasoning, or would it?

A. For this reasoning?

Q. That's my point. Would you allow those feelings of yours on capital punishment to interject themselves in deliberation on these two questions here?

A. No. I don't think it would. At least I would try not to let it.

THE COURT: What if I gave you a charge, and told you that the five or seven was not correct? As a minimum, a great deal more than that?

MR. JACQUES: That would be the orders of the Court. I'd say I would have to adhere to the orders of the Court.

THE COURT: We have a new statute that allows me to explain at some point the pardon and parole law. Although you are still not to consider it in arriving at a verdict.

MR. JACQUES: I know.

THE COURT: But give you a working knowledge of what's coming down, so you are not wondering around thinking it's five to seven, and someone thinks it's a hundred.

MR. JACQUES: Well, he asked my opinion.

THE COURT: Right.

MR. JACQUES: And I have seen so much of that.

THE COURT: Well, now I can give you that law.

Knox's counsel did not exercise a peremptory challenge, thus allowing Jacques to be seated as the first member of the jury. Jacques was later chosen foreman of the jury.

The *voir dire* of Cheryl Smith by Knox's counsel proceeded, in relevant part, as follows:

Q. I notice on your form on the fourth page says, "How do you feel about capital punishment," and says, "I believe in it." Can you explain that for me?

A. Means if I feel the crime warrants, it should be executed. I have no misgivings about it.

Q. Have you felt any different way?

A. No.

Q. There's a debate in our country about whether or not it's proper, and Court activity, and stuff.

A. Right.

Q. How do you feel about that?

A. Everyone has your own opinion, and you shouldn't allow anyone else to sway your opinion about the way they feel.

Q. What factors are there to lead to your opinion? In other words, what good do you feel capital punishment does in society?

A. You hear about people getting out committing the same crimes, and I feel if it's a brutal murder that warrants that they shouldn't get off in ten years on probation, or get back out have a chance to do that again.

Q. Would the alternatives to death penalty have any bearing on your thinking as a subjective matter as to whether it should be imposed?

A. What do you mean?

Q. Whether or not a person was going to get out, or whether or not there were fixed periods of time in which a person couldn't get out, or fixed sentences.

A. That's fine, too. Just depends on the crime, like I said.

Knox's counsel again did not exercise a peremptory challenge, and Smith was seated as the third member of the jury.

The *voir dire* of Royal Williams by the court proceeded, in relevant part, as follows:

THE COURT: If the jury answers both of the questions yes, I assess his punishment at death.

If the jury answers either one of the questions no, I would assess his punishment at life.

MR. WILLIAMS: May I ask what life is?

THE COURT: If it becomes an issue, I will explain it to you in the charge.

MR. WILLIAMS: All right.

THE COURT: The law permits me to do that now. Give the jury some understanding of what it actually is.

Knox's counsel subsequently exercised a peremptory challenge to remove Williams from the panel.

Despite its colloquy during *voir dire*,[1] the trial court refused Knox's requested

---

**1.** Although never made clear in the record, we assume the trial court based its authority to instruct on parole in capital cases on Tex.Code Crim.Pro.Ann. art. 37.07, § 4(a) (Vernon Supp. 1986). This statute changed Texas law to require the trial court to submit certain instruc-

tions regarding good conduct time and parole eligibility to the jury at the punishment phase of trials for *non-capital* felonies. Prior decisions had indicated that "parole law is simply not to be considered by the jury during its deliberations." *Munroe v. State,* 637 S.W.2d 475, 476

parole instruction that would have corrected juror misconceptions about the actual meaning of a life sentence. The requested instruction [2] stated:

> Under the law applicable in this case, the defendant, if sentenced to imprisonment for life, may not earn time off the sentence imposed through the award of good conduct time. Under the law applicable in this case, if the defendant is sentenced to imprisonment for life, he will not become eligible for parole until the actual time served by him including time served in the Galveston County Jail equals 20 calendar years. Eligibility for parole does not guarantee that parole will be granted.

Knox argues that when the trial judge refused to instruct on parole despite his assurances to the contrary, Knox's constitutional rights were violated in three ways: (1) the refusal impaired, in retrospect, Knox's right to the intelligent exercise of his peremptory challenges; (2) the refusal allowed Knox's sentence to be assessed by two jurors who did not understand their sentencing alternatives; and (3) the refusal prevented Knox's jurors from considering relevant mitigating evidence that could have caused them to decline to impose a death sentence.

■■■ Knox's second and third arguments are bottomed on the underlying premise that the Constitution mandates instruction on parole in capital cases. We have twice rejected this notion. *O'Bryan v. Estelle*, 714 F.2d 365, 388–89 (5th Cir. 1983), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *Andrade v. McCotter*, 805 F.2d 1190, 1192–93 (5th Cir. 1986). The decision whether to require such an instruction rests entirely with the state legislature. *California v. Ramos*, 463 U.S. 992, 1013–14, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983). The Texas Court of Criminal Appeals ruled that Texas law does not require such instruction in capital

cases. *Knox, supra*, 744 S.W.2d at 63 (citing *Andrade v. State*, 700 S.W.2d 585 (Tex. Crim.App.1985), *cert. denied*, 475 U.S. 1112, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986)). In *King v. Lynaugh*, 850 F.2d 1055 (5th Cir.1988) (en banc), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989), we concluded that a defendant is not constitutionally entitled to question prospective jurors about their understanding of Texas parole law. *Id.* at 1056.

Precedent establishing that *voir dire* and instruction regarding parole are neither mandated by the Constitution nor required under Texas law does not forbid such *voir dire* and instruction. In *King*, we noted the Supreme Court's continuing emphasis that, "absent certain 'special circumstances' that create a particularly compelling need to inquire into racial prejudice, the Constitution leaves the conduct of *voir dire* to the sound discretion of state trial judges." *King*, 850 F.2d at 1059 (quoting *Turner v. Murray*, 476 U.S. 28, 38 n. 12, 106 S.Ct. 1683, 1689 n. 12, 90 L.Ed.2d 27 (1986)). The question then becomes the extent to which a trial court may, in the exercise of its discretion in a capital case, shape the form and results of *voir dire* by promising to instruct on the legal meaning of life imprisonment, then refuse to instruct in accordance with the promise after it has conclusively affected the defendant's exercise of his peremptory challenges.

The Supreme Court has stated:

Although "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges," *Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154, nonetheless the challenge is "one of the most important of the rights secured to the accused," *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894).

---

(Tex.Crim.App.1982). This statute was later struck down as violative of Texas constitutional provisions respecting the separation of powers and due process. *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987).

**2.** The 20-year minimum prison term expressed by statute at the time of Knox's crime has since been reduced to 15 years. *See* Tex.Code Crim. Pro.Ann. art. 42.18, § 8(c)(6) (Vernon Supp. 1991).

*Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), *overruled on other grounds, Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We have more recently recognized that "[a] defendant does enjoy a federal constitutional right to a trial before a fair and impartial jury, with the concomitant right to peremptorily challenge a limited number of prospective jurors in the selection proceedings." *Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984); *see also Cannon v. Lockhart,* 850 F.2d 437, 439 (8th Cir.1988). Accordingly, the denial or impairment of the right to exercise peremptory challenges is reversible without a showing of prejudice. *Swain v. Alabama,* 380 U.S. at 219, 85 S.Ct. at 835. As the First Circuit has noted, "[t]here is little doubt that if the court or prosecution deprives a defendant of his right to the effective exercise of peremptory challenges, it would, without more, be grounds for a new trial." *United States v. Vargas,* 606 F.2d 341, 344 (1st Cir.1979).

The Fourth Circuit has recognized that the defendant must at least have the opportunity to exercise his peremptory challenges "meaningfully." *United States v. Rucker,* 557 F.2d 1046, 1049 (4th Cir.1977). To be meaningful, the adequacy of *voir dire* examination must permit the defendant an "opportunity to make reasonably intelligent use of his peremptory challenges and challenges for cause." *Id.* (citing *Swain,* 380 U.S. at 219–20, 85 S.Ct. at 835–36). Language to this effect appears in numerous other circuit decisions. *See United States v. Vargas,* 606 F.2d 341, 344 (1st Cir.1979); *United States v. Barnes,* 604 F.2d 121, 142 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *United States v. Segal,* 534 F.2d 578, 581 (3d Cir.1976); *United States v. Hill,* 738 F.2d 152, 155 (6th Cir. 1984); *United States v. Sababu,* 891 F.2d 1308, 1325 (7th Cir.1989).

The conduct of *voir dire* is left to the broad discretion of the trial judge. The exercise of that discretion, however, is limited by "the essential demands of fairness." *Aldridge v. United States,* 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931); *United States v. Apodaca,* 666 F.2d 89, 94 (5th Cir.), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 58 (1982). A *voir dire* procedure that effectively impairs the defendant's ability to exercise his challenges intelligently is ground for reversal, irrespective of prejudice. *Rucker,* 557 F.2d at 1049.

Knox contends that his attorneys accepted two jurors whom they would not otherwise have allowed to remain on the panel had they known no parole instruction would be given. He further contends that the judge's assurances, which preceded acceptance of the first juror to be impanelled, caused his attorneys to adopt a different strategy for jury selection than would have been used had the judge not volunteered to give a parole instruction. We agree that, in view of the trial judge's statements during *voir dire,* Knox's right to challenge certain members of the venire peremptorily was impaired.

The peremptory challenge generally "permits rejection for a real or imagined partiality that is less easily designated or demonstrable [than a challenge for cause]." *Swain,* 380 U.S. at 220, 85 S.Ct. at 836. Knox's *voir dire* affirmed his concern that several jurors misperceived the implications of Texas parole law on life sentences in a way that made them more likely to impose the death penalty. The trial court stated that it now could—and would—instruct on this law. Jurors Jacques and Smith declared that they would follow the law as instructed. Based on this, Knox forewent his right to strike them peremptorily. The unkept promise to instruct thus deprived Knox of a fair exercise of the peremptory challenges he was accorded by Texas law.

The State argues that Knox did not preserve this error for appeal, arguing that he failed to object to the jurors at the time they were chosen. This, of course, wholly misses the point. The reason Knox did not object after it became clear that certain jurors harbored misconceptions about life

sentences under Texas law was the unfulfilled promise to instruct. We further note that the Texas Court of Criminal Appeals did not treat the issue as procedurally barred, but rather addressed the merits of this issue on direct appeal.

■ The State also argues that jurors Jacques and Smith both could put aside their beliefs about parole, based on the instructions actually given in this case. Regarding punishment, however, the trial judge only instructed the jury that "[t]he mandatory punishment for capital murder is death or confinement in the penitentiary for life." In a typical case, the trial court may further instruct the jury:

> You are not to discuss among yourselves how long the accused would be required to serve the sentences that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Parole and the Governor, and are no concern of yours.

*See King,* 850 F.2d at 1057. We have upheld such instruction from constitutional attack, indicating it may aptly be characterized "as stating that 'life means life.'" *Id.* at 1060; *see also O'Bryan,* 714 F.2d at 388–89 & n. 21. The trial court here did not so instruct this jury.

The summary instruction given could in no way be construed to counter the jurors' professed misconceptions, as it left the term "life" and the possible impact of parole undefined. The instruction cannot reasonably be construed to fulfill the assurance given during *voir dire,* upon which defense counsel had to rely in exercising Knox's peremptory challenges and formulating his continuing strategy and approach to *voir dire.*

We neither hold nor imply that an instruction on parole is constitutionally mandated in every case. Our decision here is based upon a breach of fundamental fairness in the procedure which governed the exercise of the defendant's peremptory challenges. When Knox's counsel was allowed to question jurors about their beliefs concerning parole during *voir dire,* and the court interjected comments amounting to a promise to correct stated misconceptions,

the failure to fulfill that promise denied Knox an intelligent exercise of peremptory challenges and violated due process.

The decision of the district court is REVERSED and REMANDED with instructions to grant the writ of habeas corpus, unless the State of Texas conducts a new penalty determination proceeding within a reasonable time.

REVERSED and REMANDED.