**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gregorio C. PEREZ, Jr., aka "Junior"**
**Perez, Defendant-Appellant.**

**No. 84–1173.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 15, 1985.

Decided Aug. 26, 1985.

As Amended on Denial of Rehearing
Nov. 15, 1985.

Frederick J. Kerley, D. Paul Vernier, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

James S. Brooks, Brooks & Klitzkie, Agana, Guam, for defendant-appellant.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

The defendant, Junior Cruz Perez, appeals his conviction for importation of controlled substances pursuant to 21 U.S.C. § 952, contending that the indictment against him was improperly amended, that his constitutional rights were violated because of a failure to give *Miranda* warnings or provide him with counsel, and that the acts he allegedly committed did not constitute a crime. We affirm.

## FACTS

In a two-count indictment returned December 29, 1983, the defendant was charged with conspiring to import and importing a controlled substance "into the United States from a place outside thereof" in violation of 21 U.S.C. §§ 952, 960 and 963. The defendant was named in the indictment as Gregorio C. Perez, Jr., aka "Junior Perez." In an initial appearance

before the court without counsel the defendant was asked if he was Gregorio C. Perez to which he responded that he was not. When asked his true identity by the court the defendant said he was Junior Cruz Perez. After a short meeting between the defendant and the U.S. Attorney, the U.S. Attorney decided to proceed against "Junior Cruz Perez" and the court, without objection, modified the indictment to reflect this change. In the course of this modification the defendant also stated that he volunteered that he was Junior Cruz Perez when he was taken into custody.

In the subsequent trial, evidence was introduced indicating the defendant's boat was loaded with marijuana on Rota, an island in the Marianas Islands and that the boat sailed to Guam where it was then unloaded. The judge gave the jury the instruction that "for purposes of the importation of controlled substance, the Commonwealth of the Northern Mariana Islands, which includes Rota, is considered to be outside of the United States."

## DISCUSSION

### A. Amendment of the Indictment

Rule 7(e) of the Federal Rules of Criminal Procedure allows amendment to an information if no different offense is charged and if substantial rights of the defendant are not prejudiced. While this rule deals only with the amendment of an information, it has been extended to apply to indictments as well where the change concerns matters of form rather than substance. *United States v. Dawson,* 516 F.2d 796 (9th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975). Although this circuit has not dealt with the precise issue of a change in the form of a name [1] several other courts have allowed this kind of amendment where the defendant is not prejudiced. *See United States v. Young*

*Bros., Inc.,* 728 F.2d 682 (5th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984); *United States v. Owens,* 334 F.Supp. 1030, 1031 (D.C.Minn. 1971); *United States v. Campbell,* 235 F.Supp. 94, 96 (D.C.Tenn.1964).

In this case the indictment initially named Gregorio C. Perez, Jr. aka Junior Perez and was changed by amendment to Junior Cruz Perez. The amendment simply conformed the indictment to the accused's preferred name. The accused was not prejudiced by this change—he consented to it, it differed little from the original "aka" and he made no claim that another Junior Perez existed. Therefore, the amendment was proper.

### B. Constitutional Violation

#### 1. Miranda

The defendant first alleges that the court violated his constitutional rights by asking him his name prior to the giving of any *Miranda* warnings. However, for *Miranda* warnings to be required, there must be interrogation within the meaning of *Miranda.* Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections. *See United States v. Booth,* 669 F.2d 1231, 1238 (9th Cir.1981); *United States v. Glen-Archila,* 677 F.2d 809, 815–16 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 137 (1982). Both the court's questions and subsequent discussion between the defendant and the U.S. Attorney were concerned with obtaining the routine background information of the defendant's identity. Moreover, the defendant himself notes that he volunteered the information about his true name previously but no one believed him. Because any questioning involved only routine "booking" information and because the defendant volunteered his true name, there was no interrogation and *Miranda* warnings were not required.

1. The one analogous Ninth Circuit case, *Chow Bing Kew v. United States,* 248 F.2d 466 (9th Cir.), *cert. denied,* 355 U.S. 889, 78 S.Ct. 259, 2 L.Ed.2d 188 (1957), refused to allow a court to insert the name of a defendant where the count in the indictment left a blank space instead of charging a particular person. This case is distinguishable from the present one, however, because here the charge involves only the form of the name and does not substantively change the indictment by inserting a defendant where none existed before.

## 2. Right to Counsel

▪ The accused has a right to representation by appointed counsel at any "critical stage" in the proceedings against him. *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The Supreme Court has identified as critical stages those pre-trial procedures that would impair defense on the merits if the accused is required to proceed without counsel. *Coleman, supra; United States v. Wade*, 388 U.S. 218, 226–27, 87 S.Ct. 1926, 1931–32, 18 L.Ed.2d 1149 (1967). An initial appearance before a magistrate at which the indictment is read, the name of the defendant asked, the defendant is apprised of his *Miranda* rights, and counsel is appointed lacks the adversary character of later proceedings. Nothing at this stage of the proceedings (at least before counsel takes over) impairs the defense of the accused and therefore there is no constitutional right for counsel to be present. (Significantly, counsel was appointed when the proceedings may have affected his rights following the initial determination of the defendant's name). Even if failure to appoint counsel at this early stage was a constitutional violation it was harmless error. *Coleman, supra*, 399 U.S., at 11, 90 S.Ct. at 2004; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The fact that the defendant volunteered his correct name did not affect the outcome of the proceedings in any way and the defendant alleges no recognizable prejudice.

Although there is no constitutional right to counsel at this early stage, Rule 44(a), Fed.R.Crim.P. states that every indigent defendant is entitled to appointed counsel "from his initial appearance before the federal magistrate." However, we must give the rule a common sense interpretation. One of the tasks performed at an initial appearance is the appointment of counsel. To require that counsel be appointed before the judge asks routine questions such as the defendant's name and financial ability would be self-defeating. In any event, the defendant has shown no prejudice due to the court's failure to appoint counsel before asking the defendant his name.

## C. Challenge to Alleged Crime

Defendant's final claim is that because the Island of Rota (located in the Northern Marianas Islands) is a part of the United States for purposes of 21 U.S.C. § 952, his transportation of drugs from Rota to Guam was simply moving contraband from one point in the United States to another, and he therefore could not have been found guilty of importing controlled substances into the United States from "a place outside thereof." [2] The trial judge, apparently relying on *Barusch v. Calvo*, 685 F.2d 1199, 1201 (9th Cir.1982), determined that Rota was outside the United States for purposes of § 952 and so instructed the jury. We review the district court's interpretation of the statute *de novo*.

*Barusch v. Calvo, supra*, states that for purposes of customs searches the Northern Marianas was to be considered a foreign country because of its special political status as a not yet full fledged territory. However, as the defendant points out, because the Marianas are not considered a part of the United States for one purpose does not necessarily imply that they are outside the United States for all purposes, particularly for the purposes of 21 U.S.C. § 952. Section 952(a) of title 21 states:

It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States) [3] or to import into the United States from any place outside thereof, any controlled substance. . . .

The definitional section of the Drug Abuse Prevention and Control Act, 21 U.S.C. § 802(26), states that:

**2.** Defendant does not seem to challenge explicitly the jury instruction that stated that Rota was outside the United States or the sufficiency of the evidence although these claims are implicit in his challenge. These claims will be evaluated *infra*.

**3.** Both Guam and Rota are outside of the customs territory and this portion of the section is therefore inapplicable to them.

"The term 'United States,' when used in a geographic sense, means all places and waters, continental or insular, subject to the jurisdiction of the United States."

■ The Trust Territory of the Pacific Islands, which includes the Northern Marianas Islands and consequently includes Rota, is subject to the jurisdiction of the United States pursuant to 48 U.S.C. § 1681(a). Under a plain reading of the statute therefore, Rota is not a place outside the United States but is a part of the United States contrary to the finding of the district court.[4]

■ Although Rota is part of the United States, it is still possible that transporting drugs from Rota to Guam is a crime under 21 U.S.C. § 952 if such transportation involves leaving the territorial limits of the United States and then reentering. We have held that transporting drugs obtained in the United States out of the country and into another country, and then bringing them once again into the United States constitutes importation into the United States. In *United States v. Friedman,* 501 F.2d 1352, 1353–54 (9th Cir.), *cert. denied,* 419 U.S. 1054, 95 S.Ct. 635, 42 L.Ed.2d 651 (1974), the defendant obtained cocaine in the United States after it had been imported from Mexico, took it back to Mexico and then back to the United States. This court affirmed the conviction for importation of controlled substances under section 952(a). While we have never addressed the issue of whether transportation from one point in the United States to another through international waters constitutes importation, several cases from other circuits are instructive. In *United States v. Peabody,* 626 F.2d 1300, 1307 (5th Cir.1980), the court rejected a sufficiency challenge to an importation conviction stating that had the "cargo of contraband originated in, say, Texas, that would not alter the fact that it was meant to re-enter the United States from international waters. That is enough." *Id.* at 1301. *See also United States v. Lueck,* 678 F.2d 895 (11th Cir.1982) (irrelevant if controlled substance originated in the United States if it passed into international airspace). Generally, all that must be shown is that the drugs came into the United States from international waters or airspace. *United States v. Lueck, supra* (affirming jury instruction that for purposes of § 952(a) contraband must be found to have come from airspace outside of the United States' 12 mile customs limit rather than from any specific foreign soil); *United States v. Phillips,* 664 F.2d 971, 1033 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (proof of the importation element can be met by showing vessel cruised international waters or met a mother ship which cruised international waters). If all that need be proved is that the contraband cruised international waters it is necessarily irrelevant that those drugs may have originated in the United States. We therefore find that if transportation from Rota to Guam involved transit through international waters the defendant could have committed a violation of 21 U.S.C. § 952(a).

■ Having determined that the defendant could be guilty of the crime of importation, we are now required to assess the effect of the judge's jury instructions and determine whether there was sufficient evidence to support a conviction. As an initial matter, we take judicial notice of both the minimum distance between Rota and Guam and that travel between the two islands necessarily requires passage through international waters or airspace. Rule 201 of the Federal Rules of Evidence allows judicial notice of adjudicative facts where such fact is:

"one not subject to reasonable dispute in that it is either (1) generally known with-

---

4. Further evidence that the Trust Territory is meant to be included in the United States for purpose of the Drug Control Act is the definition at 21 U.S.C. § 802(24) which defines "state" as "any state, territory, or possession of the United States, the District of Columbia, the Common-

wealth of Puerto Rico, the Trust Territory of the Pacific Island, and the Canal Zone." Also the legislative history states that the definition of United States contemplates the inclusion of the Trust Territory. 1970 U.S.Code Cong. & Ad. News 4599.

in the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The minimum distance between Rota and Guam, 31 nautical miles, is a fact subject to accurate determination from a map prepared by the Defense Mapping Agency (Chart No. 810004). The territorial waters of the United States extend for three miles from the coastline of Guam. 48 U.S.C. § 1705(a) (1984). The territorial sea of the Commonwealth of the Northern Marianas, which includes Rota, extends twelve miles from its coastline. 2 CMC § 1123, § 1114(a) (1984).[5] Because the combination of the two territorial seas could, at most, cover fifteen miles, it is also obvious that any trip between Rota and Guam must involve travel through international waters.

 In light of this fact, it is evident that the judge's erroneous instruction that Rota was to be considered outside of the country is harmless and that there was sufficient evidence for the jury to find importation. Proof of importation may be made by circumstantial evidence. *Phillips, supra.* In this case, the prosecution offered evidence that the boat sailed to Rota, loaded contraband, and then sailed back. The judge instructed the jury that Rota was to be considered outside of the United States and the jury found the defendant guilty of importation. Implicit in this finding is the finding that the defendant transported contraband from Rota to Guam. Because the defendant had to pass through international waters on this trip he is still guilty of importation and the judge's instruction, while erroneous, is harmless. Moreover, while the government could have established more precisely that the defendant brought contraband into Guam through international waters, the showing that the vessel sailed from Rota to Guam loaded with the drugs, coupled with the facts we noticed, provide sufficient evidence to uphold the conviction.

The conviction is therefore, AFFIRMED.

---

5. Perez correctly points out that the Commonwealth has established an "exclusive economic zone" extending 200 miles from its coast. *See* 2 CMC § 1124 (1984). However, the exclusive economic zone was apparently created to deal with economic and environmental concerns and is not a declaration of sovereignty for all purposes over the 200 mile area. *See* 2 CMC § 1114(b). *Cf.* 48 F.R. 10605–06 (1983) (establishing Exclusive Economic Zone of the United States which is "an area beyond the territory and territorial use of the United States...."). *See generally,* 6A *Benedict on Admiralty,* 10–103–04 (1985) (Exclusive Economic Zones under the Law of the Sea Treaty).

Perez also notes the existence of a "contiguous zone" that extends twelve miles beyond the edge of the territorial sea of the Commonwealth. *See* 2 CMC § 1125 (1984). This zone was intended to be an area in which the Commonwealth can arrest for customs and other violations that may have taken place in territorial waters. 2 CMC § 1114(c) (1984). The implication is that there is no further assertion of sovereignty over this area. Even if there were, however, a twenty-four mile zone off Rota plus a three mile zone off Guam still totals less than the thirty-one mile distance between the two islands. Thus, Perez must have passed through international waters.