**The PEOPLE OF the TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Kakio SUGIYAMA, a/k/a Keiki Sugiyama, Defendant–Appellant.**

**The PEOPLE OF the TERRITORY OF GUAM, Plaintiff–Appellee,**

v.

**Fidel S. MENDIOLA and Marky Rengiil, Defendants–Appellants.**

Nos. 87–1075, 87–1080.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 15, 1988.

Decided May 16, 1988.

F. Randall Cunliffe, Cunliffe & Cook, P.C., Agana, Guam, for defendants-appellants.

Terry E. Timblin and Charles Troutman, Office of the Atty. Gen. for the Territory of Guam, Agana, Guam, for plaintiff-appellee.

Before ALDISERT,* SKOPIL and SCHROEDER, Circuit Judges.

PER CURIAM:

Kakio Sugiyama appeals her conviction for importing marijuana into the Territory of Guam after her arrest at the Guam International Airport. Sugiyama contends that Guam has no customs authority, and that even if such authority exists, the customs officer had insufficient suspicion to conduct a pat-down search. Appellants Marky Rengiil and Fidel Mendiola, also convicted for importing marijuana, have adopted Sugiyama's briefs. We affirm.

On April 15, 1985, Sugiyama picked up a shipment of fish at the Guam International Airport. The package was addressed to Elsie Nolan and was sent from Palau. Nolan is Sugiyama's aunt. Three days later, a similar shipment arrived, which contained marijuana. Nolan attempted to pick up the package, but changed her mind because she did not have enough money. On May 23, 1985, Sugiyama arrived at the Guam International Airport on a non-stop flight from Palau. Knowing of Sugiyama's connection to the packages from Palau previously sent to the airport, a customs officer subjected her to a pat-down search. Ten plastic bags containing marijuana were found on Sugiyama's person. She was convicted of importing marijuana after pleading guilty, but preserved her right to appeal the denial of her motion to suppress the marijuana seized.

On appeal, Sugiyama argues that Guam has no customs authority and therefore the evidence obtained from the pat-down search must be suppressed because the search was illegal. Her premise is incorrect; Guam has customs authority.

19 C.F.R. § 7.8(a), n. 5, states that, "[t]he Customs administration of Guam is under the Government of Guam." Further, this circuit has specifically recognized that Guam has customs authority. *Barusch v. Calvo,* 685 F.2d 1199, 1201 (9th Cir.1982).

Counsel for the Government points out that our opinion in *Barusch* contains an inaccuracy. The opinion states that, "[t]he Secretary of the Treasury has delegated to the Government of Guam the authority to administer United States customs in Guam." 685 F.2d at 1201. We need not consider what substantive provisions of law were being enforced. The issue presented by the appellant is whether Congress has delegated customs authority to Guam, and it clearly has. However, the *Barusch* opinion should have stated that "Congress" delegated the authority rather than the "Secretary of the Treasury." Congress has plenary power over Territories of the United States. U.S. Const., art. IV, § 3, *see also Guam v. Olsen,* 431 U.S. 195, 205, 97 S.Ct. 1774, 1780, 52 L.Ed.2d 250 (1977) (dissenting opinion); *Downes v. Bidwell,* 182 U.S. 244, 267–68, 21 S.Ct. 770, 779, 45 L.Ed. 1088 (1901).

In the Tariff Act of 1930, Congress defined the term "United States" as including "all Territories and possessions of the United States except the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, and the island of Guam." 19 U.S.C. § 1401(h). Congress' conscious choice to exclude Guam from the provisions of the Tariff Act, in view of its plenary power over Guam, acted as a delegation of customs authority to Guam. This congressional delegation was expressed by the Secretary of the Treasury in 19 C.F.R. § 7.8 n. 5, in which the Secretary named the islands listed in 19 U.S.C. § 1401(h) as "not within the customs territory of the United States. Importations into those islands are not governed by the Tariff Act of 1930 or these Customs Regulations.... The Customs administration of Guam is under the Government of Guam." Thus, the Secretary's regulation was promulgated pursu-

---

* Honorable Ruggero J. Aldisert, Senior United States Court of Appeals Judge for the Third Circuit, sitting by designation.

ant to the statutory delegation. *Barusch* correctly explained that "[t]he Territory of Guam is itself outside the customs territory of the United States," and properly cited to the Secretary's regulation. 685 F.2d at 1201–02 n. 3. The inaccuracy in the text of the opinion is irrelevant to its holding, and ours, that Guam has customs authority. The search was therefore lawful.

■ Sugiyama next argues that because Palau is part of the United States for purposes of narcotics violations, she was moving contraband from one point in the United States to another, and therefore could not have been found guilty of importing controlled substances into the United States. This circuit specifically addressed this issue in *United States v. Perez*, 776 F.2d 797 (9th Cir.1985). In *Perez*, the defendant made the same argument concerning the Island of Rota. Rota is part of the Trust Territory of the Pacific Islands, as is Palau. We there held that the defendant was guilty of importing contraband from Rota to Guam, stating that it was sufficient if the drugs came into the United States from international waters or airspace. *Id.* at 801. Since Sugiyama transported the marijuana from Palau to Guam via an airline, she passed through international airspace. *See id.* ("As an initial matter, we take judicial notice of both the minimum distance between Rota and Guam and that travel between the two islands necessarily requires passage through international waters or airspace").

■ Finally, Sugiyama contends that even if Guam has legitimate customs authority, the customs officer did not have sufficient suspicion to conduct a pat-down search. We have noted that border searches occupy "a unique spot in fourth amendment jurisprudence. Unlike almost all other searches, ... a border search may be initiated without a warrant, probable cause, or even articulable suspicion." *United States v. Des Jardins*, 747 F.2d 499, 502 (9th Cir.1984), *vacated in part,*

772 F.2d 578 (9th Cir.1985). Under our decisions, a simple pat-down search is permissible with only a minimal showing of suspicion. *Id.* at 504; *see also United States v. Couch*, 688 F.2d 599, 604 (9th Cir.), *cert. denied*, 459 U.S. 857, 103 S.Ct. 128, 74 L.Ed.2d 110 (1982). Since the lower court found that Sugiyama's connection to packages previously sent to the airport from Palau was known, the "minimal suspicion" standard is met.

AFFIRMED.

SKOPIL, Circuit Judge, concurring:

I agree that Guam has authority to administer customs in Guam. I disagree, however, with the majority's conclusion that Congress has delegated to Guam the authority to administer *United States* customs laws rather than Guam's own customs laws.[1] Contrary to the majority's assertion, the parties have argued at length whether Guam may administer its own customs laws and what substantive law exists authorizing the customs searches.

Both parties agree that because Guam is outside United States customs territory, United States customs laws have no force or effect. Guam need not administer *United States* customs simply because Congress excluded Guam from United States customs territory. *See* 19 U.S.C. § 1401(h) (1982). Rather, this exclusion should only result in a "delegation" to Guam to administer and enforce its *own* customs law. Therefore, in addition to our inaccurate statement in *Barusch v. Calvo*, 685 F.2d 1199, 1201 (9th Cir.1982) that the Secretary delegated custom's authority, *Barusch* erroneously states that the delegation was "authority to administer *United States* customs in Guam." *Id.* (emphasis added).

My conclusion is buttressed by the Secretary of the Treasury's regulation, which specifically states that importations into Guam "are not governed by the Tariff Act of 1930 or *these Customs Regulations....* The Customs administration of Guam is

---

1. Even if Guam is subject to United States customs laws, the majority fails to consider whether Guam customs officials possess authority to enforce United States customs by conducting searches of persons, vessels, and merchandise. *See United States v. Soto–Soto*, 598 F.2d 545,

549–50 (9th Cir.1979) (because FBI agent had no customs authority to conduct warrantless search, evidence was properly suppressed). Without a delegation of authority to enforce customs laws, the searches in question here were illegal. *See id.*

under the *Government of Guam*." 19 C.F. R. § 7.8 n. 5 (1987) (emphasis added). The majority cites this regulation in support of its position that Guam has authority to administer customs, but fails to recognize that the regulation contradicts the majority's bold assumption that Guam must administer United States customs. Because I conclude that these laws and regulations leave Guam with authority to administer its own laws, the question then becomes whether Guam law permits its customs officials to conduct the searches at issue.

Both the Guam legislature and the Governor have authorized Guam customs officials to search arriving persons, baggage, and merchandise. Guam Gov't. Code § 47124 (1970) authorizes the examination of baggage. Governor's Memorandum 33–52 (1952) authorizes the inspection of persons, baggage, and merchandise arriving in Guam.[2] Because the customs officials had the necessary authority and minimal suspicion to search, I agree with the majority that appellants' convictions should be affirmed.

---

**2.** Section 6 of the Organic Act of Guam empowers the Governor "to issue executive orders and regulations not in conflict with any applicable law." 48 U.S.C. § 1422 (1982). While section 47124 authorizes only the search of baggage, the Governor's Memorandum is not inconsistent with this legislative grant of authority. Further, although the Guam legislature repealed the 1939 Tariff Schedule and Customs Regulations and other Memoranda, the legislature did not repeal the Governor's Memorandum 33–52. *See* Pub. L. No. 88, First Guam Legislature (1952).