# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

YONG JUN LI,
*Defendant-Appellant.*

No. 10-10079

DC No.
1:10-cr-08 ARM

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

WEI KUN ZHONG,
*Defendant-Appellant.*

No. 10-10089

DC No.
1:10-cr-021 ARM

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SHI GUANG LI,
*Defendant-Appellant.*

No. 10-10095

DC No.
1:10-cr-05 ARM

OPINION

Appeals from the District Court
for the Northern Mariana Islands
Alex R. Munson, Chief District Judge, Presiding

Argued and Submitted
February 17, 2011—Honolulu, Hawaii

Filed May 2, 2011

5669

Before: A. Wallace Tashima, William A. Fletcher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

George Anthony Long, Law Office of G. Anthony Long, San Jose, Saipan, MP, for defendant-appellant Yong Jun Li.

Sean E. Frink, Carlsmith Ball LLP Saipan, MP, for defendant-appellant Wei Kun Zhong.

Bruce Berline, Law Office of Bruce Berline, Garapan, Saipan, MP, for defendant-appellant Shi Guang Li.

Kirk W. Schuler, Assistant United States Attorney, Saipan, MP, for the plaintiff-appellee.

---

**OPINION**

TASHIMA, Circuit Judge:

In these consolidated appeals, Defendants-Appellants Shi Guang Li, Wei Kun Zhong, and Yong Jun Li (collectively, "Defendants") appeal their convictions for violation of 8 U.S.C. § 1325(a)(1), for attempting to enter the United States at a time or place not designated by immigration officers. The three were charged with attempting to travel from the Commonwealth of the Northern Mariana Islands ("CNMI") to the Territory of Guam by boat.

We have jurisdiction under 28 U.S.C. § 1291. *See, e.g.*, *United States v. Atalig*, 502 F.3d 1063, 1065 (9th Cir. 2007). We hold that an alien does not "enter[ ] or attempt[ ] to enter the United States" for purposes of § 1325(a)(1) when traveling by boat from the CNMI to Guam. Accordingly, we reverse Defendants' convictions.[1]

**I.**

Title VII of the Consolidated Natural Resources Act of 2008, Pub. L. No. 110-229, 122 Stat. 754 (codified in relevant part at 48 U.S.C. §§ 1806-1808) ("CNRA"), applies the immigration laws of the United States to the CNMI. *See* 48 U.S.C. § 1806(a)(1). Prior to passage of the CNRA, the CNMI was

---

[1]Because we so hold, we do not reach either the evidentiary issues raised by Defendant Shi Guang Li or the constitutional arguments raised by all three Defendants.

considered to be outside the United States for immigration purposes. The CNRA provided for a transition period ending December 31, 2014, during which certain exceptions to United States immigration law apply. *See* 48 U.S.C. § 1806(a)(2). The transition period went into effect on November 28, 2009. *See Northern Mariana Islands v. United States*, 670 F.Supp.2d 65, 73 (D.D.C. 2009).

Defendants were charged by information with violating 8 U.S.C. § 1325(a)(1) for being aliens who knowingly and wilfully attempted to enter the United States at a time and place other than as designated by immigration officers by attempting to travel by boat from Saipan in the CNMI to Guam on or about January 5, 2010, a date within the CNRA's transition period. Defendants filed motions to dismiss the informations, arguing that because the CNRA made the CNMI part of the United States for purposes of immigration law, an alien traveling from Saipan to Guam at a time or place not designated by immigration officers does not commit a criminal offense. The motions were denied. The district court concluded that because Defendants were arrested during the CNRA's transition period, the CNMI was not fully a part of the United States for immigration purposes. The court declined to rule on the United States' alternative argument that Defendants would be properly charged even if the CNMI were deemed a part of the United States for immigration purposes. Upon the denial of the motions, Defendants Yong Jun Li and Wei Kun Zhong entered conditional pleas of guilty, reserving their right to appeal the denial of the motions to dismiss. Defendant Shi Guang Li was convicted after a bench trial. Each Defendant was sentenced to one year of probation.

## II.

"The construction or interpretation of a statute is a question of law that we review de novo." *United States v. Cabaccang*, 332 F.3d 622, 624-25 (9th Cir. 2003) (en banc).

## A.

In denying Defendants' motions to dismiss, the district court noted that during the transition period established by the CNRA, certain exceptions to United States immigration law apply in the CNMI, *see* 48 U.S.C. §§ 1806(a)(7), (b)-(e), and concluded that, as a result, "the transition period exceptions require the conclusion that the CNMI is not yet fully a part of the United States for immigration purposes."

[1] The district court undertook the wrong inquiry. Although the CNRA does provide for some exceptions to United States immigration law that apply to the CNMI during the transition period, both the Immigration and Nationality Act ("INA") and the CNRA demonstrate that the CNMI is a part of the United States for purposes of § 1325(a)(1). The INA defines "United States," "when used in a geographical sense," as "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, the Virgin Islands of the United States, and the Commonwealth of the Northern Mariana Islands," unless "otherwise specifically . . . provided" in the statute. 8 U.S.C. § 1101(a)(38). Similarly, it defines the term "State" to include both Guam and the CNMI. 8 U.S.C. § 1101(a)(36). Section 1325(a)(1) does not by its terms exclude the CNMI, and the parties do not point to any other provision of the INA that excludes the CNMI for purposes of § 1325(a)(1).

[2] Concomitantly, the CNRA, on which the district court relied in these cases, does not indicate that the CNMI is outside the United States for immigration purposes. The CNRA's plain text commands that the exceptions to the principle that the immigration laws of the United States apply to the CNMI be restricted to those explicitly set forth in the statute, none of which refers to § 1325(a)(1). *See* 48 U.S.C. § 1806(a)(1) (during the transition period, "the provisions of the 'immigration laws' (as defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17))) shall apply to the Commonwealth of the Northern Mariana Islands . . . ,

*except as otherwise provided in this section*" (emphasis added)).

**[3]** Accordingly, the CNMI is a part of the United States for purposes of § 1325(a)(1).

**B.**

Although the CNMI and Guam are both parts of the United States for purposes of United States immigration law, the government argues that it is still possible to violate § 1325(a)(1) by traveling by boat from the CNMI to Guam, because the trip necessarily involves travel through international waters. This argument has two premises: first, that the trip from the CNMI to Guam does in fact require travel through international waters, and, second, that travel from the CNMI to Guam through international waters constitutes "enter[ing] the United States" for purposes of § 1325(a)(1).

**[4]** We agree with the government's first premise. The minimum distance between Guam and Rota, the CNMI island closest to Guam, is 31 nautical miles. *See United States v. Perez*, 776 F.2d 797, 802 (9th Cir. 1985) (taking judicial notice of this fact), *overruled in part by United States v. Cabaccang*, 332 F.3d 622, 634-35 & n.21 (9th Cir. 2003) (en banc). United States territorial waters extend only 12 nautical miles from the coastline, meaning that at most 24 nautical miles of the distance between Rota and Guam is within United States territorial waters. *See, e.g.*, *United States v. Bennett*, 363 F.3d 947, 950 n.2 (9th Cir. 2004) ("United States territorial waters include a 12-nautical-mile strip of ocean extending from the coastline."); *Perez*, 776 F.2d at 802 ("Because the combination of the two territorial seas could, at most, cover [less than 31 nautical miles], it is also obvious that any trip between Rota and Guam must involve travel through international waters."). Accordingly, some portion of

a voyage by boat between the CNMI and Guam would of necessity be through international waters.[2]

We disagree, however, with the government's second premise. A long line of authority construing the term "entry" in the immigration context compels the conclusion that when one travels from one part of the United States to another through international waters, one does not "enter the United States."

**[5]** In *United States ex rel. Claussen v. Day*, 279 U.S. 398 (1929), the Supreme Court, construing the Immigration Act of 1917, noted:

The word "entry" by its own force implies a coming from outside. The context shows that in order that there be an entry within the meaning of the act there must be an arrival from some foreign port or place. There is no such entry where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place.

*Id.* at 401. In subsequent decisions, the Court repeatedly held that this discussion meant that no entry into the United States

---

[2]Defendant Wei Kun Zhong argues that Presidential Proclamation 7219, 64 Fed. Reg. 48701 (Aug. 2, 1999), extended United States territory to 24 miles from shore. We disagree. The proclamation extends only the contiguous zone of the United States, which does not represent United States territory, but only a region "in which the United States may exercise the control necessary to prevent infringement of its customs, fiscal, immigration, or sanitary laws and regulations within its territory or territorial sea, and to punish infringement of the above laws and regulations committed *within its territory or territorial sea*." *Id.* (emphases added); *see also* United Nations Convention on the Law of the Sea art. 33, Dec. 10, 1982, 1833 U.N.T.S. 397, *available at* http://www.un.org/Depts/los/convention_agreements/texts/unclos/unclos_e.pdf.

occurred when an alien traveled from one part of the United States to another on a route that took him or her through international waters. In *Delgadillo v. Carmichael*, 332 U.S. 388 (1947), where a Mexican citizen and American resident was serving as a crew member on an American merchant ship on a voyage from Los Angeles to New York when the ship was torpedoed, the court noted that "[i]f [Delgadillo's] intercoastal voyage had continued without interruption, it is clear that he would not have made an 'entry' when he landed at its termination." *Id.* at 391 n.1. Similarly, in *Barber v. Gonzales*, 347 U.S. 637 (1954), the Court determined that an individual who traveled from the Philippines to the continental United States before the Philippine Independence Act had "made no 'entry.' " *Id.* at 642. The Court noted that "a different conclusion would not be permissible in view of the well-settled meaning of 'entry' . . . ." *Id.* Accordingly, under the Supreme Court's long-established understanding of "entry" for purposes of immigration law, an alien does not "enter the United States" when she or he travels through international waters from one part of the United States to another.

Significantly, *Claussen* construed entry within months of the first enactment of criminal penalties for illegal entry. *See* Act of March 4, 1929, Pub. L. No. 70-1018, § 2, 45 Stat. 1551 ("Any alien who hereafter enters the United States at any time or place other than as designated by immigration officials . . . shall be punished by imprisonment for not more than one year or by a fine of not more than $1,000, or by both such fine and imprisonment."); Mae M. Ngai, *Impossible Subjects: Illegal Aliens and the Making of Modern America* 60 (2004). This understanding of entry was codified in the Immigration and Nationality Act of 1952, Pub. L. No. 82-414, 66 Stat. 163 (the "1952 Act"),[3] which also contained a version of

---

[3]The full definition, as it appeared before its repeal in 1996, is as follows:

  The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying posses-

§ 1325(a)(1)'s precursor.[4] Under the 1952 Act, this court continued to apply the meaning of "entry" established by *Claussen* and its progeny. *See, e.g.*, *United States ex rel. Alcantra v. Boyd*, 222 F.2d 445 (9th Cir. 1955) (holding that United States resident from the Philippines made no "entry" under the 1952 Act taking a voyage by boat from Alaskan waters to Seattle). *But see United States v. Tsai*, 282 F.3d 690, 696 n.5 (9th Cir. 2002) (distinguishing *Alcantra* because that case depended on the definition of "entry" under the 1952 Act, whereas Tsai's case was governed by the post-IIRIRA definition of "admission," and noting that under the definition of "United States" in the INA then in effect "Tsai's trip from Guam to Saipan took him outside the United States for purposes of the immigration laws" because the definition "include[d] Guam but [did] not mention[ ] the CNMI").

Although Congress repealed the statutory definition of "entry" when it enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), *see*

---

sion, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: *Provided,* That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

8 U.S.C. § 1101(a)(13) (West 1996). "The term 'outlying possessions of the United States' means American Samoa and Swains Island," and thus includes neither the CNMI nor Guam. 8 U.S.C. § 1101(a)(29) (2010); *accord* 8 U.S.C. § 1101(a)(29) (West 1996).

[4]"Any alien who (1) enters the United States at any time or place other than as designated by immigration officers . . . shall, for the first commission of any such offense[ ] . . . be punished by imprisonment for not more than six months, or by a fine of not more than $500 . . . ." 1952 Act, § 275, 66 Stat. at 229.

*Camins v. Gonzales*, 500 F.3d 872 (9th Cir. 2007), IIRIRA did not provide a new definition of "entry"; instead, " 'it . . . eliminated the key terms "entry" and "intended" from § 101(a)(13) and replaced the former statute with a comprehensive scheme for determining the classification of returning aliens.' " *Id.* at 879. As a result of this change, legal permanent residents who have committed crimes making them "inadmissible" now risk deportation not by making an "entry," but instead by seeking "admission." *See id.* at 875, 878; *see also* 8 U.S.C. § 1101(a)(13)(C).

**[6]** The criminal provision of § 1325, however, continues to turn on whether an alien "enters" the United States. As such, and because Congress did not provide a new definition of "entry" in the statute, the prior judicial construction of "entry" continues to govern the meaning of the statute. *Cf. Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010) (citing cases for the proposition that "where Congress uses terms with settled meanings, 'a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms,' " and relying on how "the BIA had long defined 'entry' " at the time of IIRIRA's passage); *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002) (interpreting, in a post-IIRIRA case, the word "enter" in § 1325 by relying on judicial understanding of the term stretching back to 1908). Accordingly, it remains the case that an alien traveling from one part of the United States to another does not "enter the United States" at the end of the voyage simply by virtue of having traveled through international waters in the course of that trip.

## C.

**[7]** Finally, the government argues that 8 U.S.C. § 1182(d)(7), which provides that certain criteria making aliens inadmissible to the United States also apply to aliens who "leave Guam, the [CNMI], Puerto Rico, or the Virgin Islands of the United States, and who seek[ ] to enter the con-

tinental United States or any other place under the jurisdiction of the United States," indicates that the criminal penalties of § 1325(a) are also meant to apply in the same situation. 8 U.S.C. § 1182(d)(7). We disagree.

First, "enter" as used in this provision is qualified. Unlike § 1325(a)(1), which applies to aliens who "enter[ ] the United States," 8 U.S.C. § 1325(a)(1), § 1182(d)(7) applies only to aliens who "enter the *continental* United States or any *other* place under the jurisdiction of the United States." 8 U.S.C. § 1182(d)(7) (emphasis added). As such, it acknowledges that aliens in the CNMI and the other jurisdictions listed have already entered the United States.

**[8]** Second, unlike § 1325, which imposes criminal penalties, § 1182(d)(7) provides only that certain aliens are inadmissible, and thus subject to the removal process. By its own terms, "[a]ny alien described in this paragraph, who is denied admission to the United States, shall be immediately removed . . . ." 8 U.S.C. § 1182(d)(7). Accordingly, this provision fails to demonstrate that Congress wished to provide *criminal* sanctions for travel between the CNMI and other parts of the United States. Given that Congress has explicitly established a legal regime for dealing with aliens who make unauthorized travel between the CNMI and Guam, we will not assume that it intended a more general provision to apply in the face of a long history that suggests otherwise, especially where the result is to make individuals vulnerable to criminal sanctions without clear notice. *Cf. United States v. Millis*, 621 F.3d 914, 916-17 (9th Cir. 2010) (noting that "the rule of lenity requires courts to limit the reach of criminal statutes to the clear import of their text and construe any ambiguity against the government") (internal quotation marks omitted).

## III.

**[9]** Because both the CNMI and Guam are parts of the United States, and an alien does not "enter[ ] the United

States" for purposes of the criminal statute 8 U.S.C. § 1325(a)(1) when traveling from one part of the United States to another, even if when doing so she or he passes through international waters, Defendants did not violate the statute by attempting to travel by boat from the CNMI to Guam.

Each of the judgments of conviction is **REVERSED.** These cases are remanded to the district court with instructions that each of the informations be **DISMISSED.**