
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10462 |
| Plaintiff - Appellee, | D.C. No. 1:10-cr-00031-PMP-4 |
| v. | |
| PINGPING ZHANG, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10463 |
| Plaintiff - Appellee, | D.C. No. 1:10-cr-00031-PMP-1 |
| v. | |
| SHIXU HUANG, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10466 |
| Plaintiff - Appellee, | D.C. No. 1:10-cr-00031-PMP-2 |
| v. | |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

LIHUA YI,

          Defendant - Appellant.

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

     v.

ZHANSHAN ZHANG,

          Defendant - Appellant.

No. 10-10467

D.C. No. 1:10-cr-00031-PMP-5

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Philip M. Pro, District Judge, Presiding

Argued and Submitted October 7, 2011
Honolulu, Hawaii

Before: O'SCANNLAIN, TALLMAN, and M. SMITH, Circuit Judges.

Shixu Huang, Lihua Yi, Pingping Zhang, and Zhanshan Zhang appeal their

convictions for conspiracy to defraud the United States in violation of 18 U.S.C. §

371.

The indictment against appellants was sufficient because when "read in its

entirety" it "contain[ed] the elements of the charged crime in adequate detail to

inform the defendant[s] of the charge and to enable [them] to plead double

2

jeopardy." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotation marks omitted); *see also United States v. Caldwell*, 989 F.2d 1056 (9th Cir. 1993).

The government was not required to prove "separate and distinct" conduct from conduct that would support a conviction for conspiracy to commit a substantive offense because the crime of conspiracy is complete when an individual enters into an agreement to obstruct a lawful function of the government by deceitful or dishonest means and makes at least one overt act in the furtherance of the conspiracy. *Caldwell*, 989 F.2d at 1059. The "defraud" clause of section 371 "criminalizes *any* willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute." *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989). Therefore, proof of "separate and distinct" conduct is not required because "[t]he overt act need not be criminal itself." *Id.*; *see also Caldwell*, 989 F.2d at 1059 ("Neither the conspiracy's goal nor the means used to achieve it need to be independently illegal."); *see generally United States v. Li*, 643 F.3d 1183, 1184 (9th Cir. 2011) (holding that an alien does not enter or attempt to enter the United States for purposes of section 1325(a)(1) when traveling by boat from the Commonwealth of the Northern Mariana Islands to Guam) (internal quotation marks omitted).

3

There was sufficient evidence of Lihua Yi and Pingping Zhang's knowing participation in the conspiracy. *United States v. Moreland*, 622 F.3d 1147, 1168 (9th Cir. 2010) ("There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)); *United States v. Perry*, 550 F.2d 524, 528–29 (9th Cir. 1977). Relatedly, there was sufficient evidence of both deceit and an agreement to obstruct a lawful immigration function of the government to sustain the conspiracy convictions. *Moreland*, 622 F.3d at 1168; *see also* 8 U.S.C. § 1182(d)(7); 8 C.F.R. § 235.5.

The district court did not err in refusing to adopt Lihua Yi's proposed specific unanimity instruction because there was not a sufficient possibility of juror confusion in this case. *United States v. Kim*, 196 F.3d 1079, 1082–83 (9th Cir. 1999). Nor did the district court err in informing the jury of the duties of aliens traveling from the Commonwealth of the Northern Mariana Islands to Guam. The district court's instruction was not an "incorrect statement of law" warranting reversal. *United States v. Redlightning*, 624 F.3d 1090, 1122 (9th Cir. 2010). Similarly, the district court did not err in failing to inform the jury that the Commonwealth of the Northern Mariana Islands is part of the United States, as

such an instruction was irrelevant to the appellants' defense at trial. *See* 8 U.S.C. § 1182(d)(7); 8 C.F.R. § 235.5. And the district court did not abuse its discretion in failing to provide the jury with additional instructions on the "deceit" element of a section 371 violation. *Redlightning*, 624 F.3d at 1122.

Appellants' remaining arguments are without merit.

**AFFIRMED**.

USA v. Zhang, et al.    10-10462

**M. Smith, Circuit Judge, concurring**:

This is a disturbing case.  Although I feel compelled by precedent to agree with the judgment and reasoning of the memorandum disposition, I write separately to highlight what I consider to be the highly questionable tactics used by the prosecutors in this case.  Those tactics arguably frustrate Congress's purpose in enacting 18 U.S.C. § 371, and also undermine the United States Sentencing Commission's judgment in establishing a range of reasonable sentences.  Moreover, they are more consistent with an approach of seeking to obtain a conviction with the longest possible sentence than seeing that justice is done, an approach which is in tension with prosecutors' role as public fiduciaries.  *See The Supreme Court, 2009 Term—Leading Cases*, 124 Harv. L. Rev. 360, 367 (2010) ("[P]rosecutors have a . . . role as public fiduciary.  In this capacity, the prosecutor occupies a quasi-judicial position in which the goal is not to win a case, but [to see] that justice shall be done.  Thus, [t]o this extent, our so-called adversary system is not adversary at all; nor should it be.") (citations and internal quotation marks omitted).

The government initially charged each defendant with one count of attempting to enter the United States in violation of 8 U.S.C. § 1325(a)(1).  The penalty for violation of Section 1325(a)(1) is a term of imprisonment of not more than six months

1

for the first commission of the offense when an alien attempts to enter the United States at a time or place other than as designated by immigration officers. 8 U.S.C. § 1325(a)(1). Later, the government obtained an indictment charging each defendant with one count of conspiracy to commit offenses and to defraud the United States, in violation of 18 U.S.C. § 371; eluding examination and inspection, in violation of 8 U.S.C. § 1325(a)(2); and attempted improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(1). One defendant agreed to cooperate with the government and pled guilty to one count of eluding examination and inspection, in violation of 8 U.S.C. § 1325(a)(2), a misdemeanor carrying a maximum of six-months' imprisonment. *See* 8 U.S.C. § 1325(a)(2). However, the government became aware that *United States v. Li*, 643 F.3d 1183 (9th Cir. 2011), which addressed the question of whether defendants performing similar conduct had violated 8 U.S.C. § 1325(a)(1), was pending before our court, and preemptively moved just before the trial began to dismiss all charges against each remaining defendant other than the alleged violation of 18 U.S.C. § 371. During argument, the government conceded that its fear of the outcome in *Li* was the reason why it had dropped the § 1325(a)(1) charges.[1] The

---

[1] The government's fear was well-founded. *Li* held that the defendants did not violate 8 U.S.C. § 1325(a)(1) by attempting to travel by boat from the Commonwealth of the Northern Mariana Islands to Guam because both places are part of the United States. *Li*, 643 F.3d at 1189. That holding and reasoning would have required a reversal of any conviction against the defendants in this case for violation of

district court granted the government's motion, and the case proceeded to trial on the defendants' alleged violations of § 371.

At trial, the defendants were all convicted of violating § 371. Judge Alsup was troubled enough about the government's approach to the case that he commented:

> This is not an isolated scenario and this case is emblematic of a larger human heartbreak. It stems from the way in which immigration has been handled in the CNMI. Prior to the passage of the Consolidated Natural Resources Act of 2008, the Commonwealth operated under its own immigration policies which were largely welcoming to foreign migrant workers such as defendants. Much of the garment work that defendants legitimately came to Saipan to perform, however, disappeared under pressure from mainland U.S.A. labor interests. Under the 2008 Act, the Commonwealth transitioned to the stricter immigration laws of the United States. Nearby Guam is said to have jobs and that belief attracts the unemployed in the CNMI.
>
> Some claim that they will face persecution if they are forced to return to China. By law, asylum applications are not available to individuals in the CNMI. Caught in a "Catch 22" scenario, defendants and others have determined that their only recourse is to enter the United States through Guam, which *does* have an asylnm application process. Ordinarily, it is a misdemeanor for an alien to attempt to enter Guam (or anywhere else in the United States) other than at a designated facility. 8 U.S.C. 1325. One interesting issue posed herein is whether this conduct, in conspiracy form, is also a felony under Section 371.

The defendants' conduct forming the basis of the § 371 charge, a felony carrying up to five-years' imprisonment, was identical to the conduct forming the

---

§ 1325(a)(1). *See id.*

3

basis of the original § 1325(a) charges, i.e., secretly attempting to enter the United States by boat at night to avoid examination or inspection by immigration officers.

The "defraud clause" of § 371 criminalizes conspiracies "to defraud the United States." 18 U.S.C. § 371. It "is a very broad provision, which subjects a wide range of activity to potential criminal penalties." *United States v. Caldwell*, 989 F.2d 1056, 1059 (9th Cir. 1993). Although the government established the necessary elements in this case under our case law, the outcome is very troubling. It essentially makes § 1325(a) redundant. The conduct § 1325(a) proscribes, such as an alien's attempting to enter the United States at a time or place not designated by immigration officers, or an alien's eluding examination or inspection by immigration officers, can almost always be characterized as falling within the scope of § 371. *See* 18 U.S.C. § 371; *Caldwell*, 989 F.2d at 1059. Such an outcome allows prosecutors to resort to the vaguer provisions of § 371 to evade Congress's choice of punishing the conduct described in § 1325(a) as a misdemeanor and the United States Sentencing Commission's choices in establishing a sentencing range for § 1325(a) violations. It also allows prosecutors to evade the will of Congress by prosecuting a conspiracy to violate § 1325(a), which would be a misdemeanor, *see* 18 U.S.C. § 371; *United States v. Little*, 753 F.2d 1420, 1444 (9th Cir. 1984), as a felony under the "defraud clause" of § 371.

The government's approach of prosecuting novel theories of criminal liability under § 371 threatens to criminalize conduct that people have no reason to believe is unlawful. If left unchecked, it could lead down the proverbial slippery slope of criminalizing conduct we have stated § 371 does not criminalize, such as a husband asking his wife to buy him a radar detector for his car, or executives of a business that competes with a government enterprise lowering prices to gain customers at the government enterprise's expense. *See Caldwell*, 989 F.2d at 1059-60. It could also lead to (a) an attorney who advises a client to establish a trust to minimize tax liability being guilty of a felony; (b) a pro bono attorney who thinks a criminal defendant is probably guilty, but nevertheless represents him, of being guilty of a felony himself; or (c) an attorney's ethical duty of zealous representation meaning one thing in the context of dealings with a private party and something less in the context of dealings with the government.

Many years ago, Professor Abraham S. Goldstein warned of the possible misuse of § 371:

> [T]he federal conspiracy statute has become another governmental weapon in the eternal conflict between authority and the individual. By making unclear the line between what is permitted and what is prohibited, by conceiving the statute's reach to be as broad as that of an expanding government, present doctrine places within the power of police and prosecutor an instrument for intruding upon Everyman. The instrument is all the more dangerous because it wears the garb of

5

conspiracy, with all the tactical and evidentiary benefits that that doctrine implies. Imprecise definition and procedural advantages combine to make it virtually certain that a charge of conspiracy to defraud the United States will get to the jury—where a showing of suspicious behavior by the sort of people who ought to know better and who least appeal to that body's occasional empathy for those who commit crimes of passion and violence, is very likely to produce conviction.

. . .

It will take every bit as much ingenuity to find a way out of the maze as it took unconcern with the larger values of the criminal law and with the usual bounds of statutory definition to enter it. Doctrines must be reshaped with bold strokes and within a much larger frame than has hitherto characterized analysis in this branch of federal criminal law. Until this is done, "conspiracy to defraud the United States" will remain on the books as a Kafkaesque crime, unknown and unknowable except in terms of the facts of each case—and even then, not until the verdict has been handed down.

Abraham S. Goldstein, *Conspiracy To Defraud the United States*, 68 Yale L.J. 405, 462-63 (1959).

I do not suggest that the government may not prosecute only the most serious offenses when multiple statutes criminalize the same conduct, or that the penalties available on conviction may not influence prosecutors. The Supreme Court has held otherwise. *See United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) ("This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute[] under either so long as it does not discriminate against

any class of defendants. Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.") (citations omitted). Nevertheless, I pause to inquire whether Congress intended for prosecutors to use the "defraud clause" of § 371 as they did in this case. I question whether it did.

Future adventurous prosecutors could easily abuse the "defraud clause" in such a way as to create the Kafkaesque scenario envisioned by Professor Goldstein if they do not have a clear vision of their role as public fiduciaries, with the goal of seeing justice done. Without such a vision, future government victories could be society's loss. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.'").

I reluctantly concur.